IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANJAYKUMAR LALLUBHAI PATEL,<br><br>            Petitioner,<br><br>   v.<br><br>DAVID STILL, et al.,<br><br>            Respondents. | NO. C04-0138 TEH<br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW |

This matter came before the Court for an evidentiary hearing on March 2, 2005, on Petitioner's request for de novo review of his naturalization application after denial by the United States Citizenship and Immigration Services ("CIS"). Petitioner seeks a declaratory judgment that he is entitled to be naturalized pursuant to 8 U.S.C. §§ 1422 *et seq*. Having carefully considered all of the evidence and testimony adduced at the hearing, the parties' oral and written submissions, and the entire record herein, the Court find as follows.

**BACKGROUND**

Petitioner Sanjaykumar Lallubhai Patel ("Patel") is a native and citizen of India and a lawful permanent resident of the United States. To apply for an immigrant visa, Patel appeared for an interview at the U.S. Consulate in Mumbai, India, on March 12, 1997. The interview was conducted in English with an interpreter who translated into Hindi. Patel's native language is Gujarati, and Patel testified that the consular agents probably asked him if he wanted a Gujarati interpreter. However, Patel told them that he spoke Hindi and consented to be interviewed in Hindi in part because he thought there would only be a few questions. At no time during the

interview did Patel ask any questions or otherwise inform the staff that he had trouble understanding the questions or the explanations of the documents that he would later sign.

A few weeks after the interview, Patel returned to the U.S. Consulate and was informed that he would be granted a United States visa.  At this second interview, Patel signed Form DS-1810, Notice of Duty to Register with U.S. Selective Service.  Pet'r Ex. 1.  This form explains that men between the ages of 18 and 26 when they enter the U.S. must register with the U.S. Selective Service System, and that failure to register is a serious crime and may lead to denial of U.S. citizenship.  *Id.*  The form also states that a person cannot register after he reaches age 26.  *Id.*  Patel signed the notice with the following pre-printed acknowledgment:  "I hereby state that I received a copy of this notice, that I have read and understand what is required, and I understand that failure to comply with its requirement is a criminal act punishable by imprisonment and/or a fine."  *Id.*  The form was translated into Hindi for Patel at his visa interview.  Patel told the consular officer that he understood the requirement and agreed to follow through with it when he got to the United States.  Reporter's Transcript ("RT") at 36:22-37:12.

Patel entered the United States on April 19, 1997.  At the time, he was 20 years old. When he arrived in the United States, he did not fill out the Selective Service form because, according to Patel, he "forgot".  *Id.* at 38:21-24.

On April 22, 2002, Patel signed an application for naturalization from the United States Immigration and Naturalization Services ("INS").[1]  A friend of Patel filled out the form on his behalf, asking Patel to provide the answers to some but not all of the questions.  Section G of the application form for naturalization is entitled "Selective Service Registration"; Question 33 under that section asks, "Are you a male who lived in the United States at any time between your 18th and 26th birthdays in any status except as lawful nonimmigrant?"  Ex.4 to Dulberg Decl. at 9.  The section also states that if the answer to the above question is "yes" and the

---

[1] At the time, the INS, a division of the Department of Justice, processed naturalization applications.  After March 1, 2003, such procedures were assumed by the CIS, a division of the Department of Homeland Security.

2

applicant has not registered with the Selective Service, he must register before application for naturalization, or else explain the failure to register. *Id.* On Patel's application, the response to Question 33 is "no" and, thus, there was no explanation for his failure to register. *Id.* Patel's response to Question 33, however, was incorrect as he had been a lawful permanent resident during the period between his 18th and 26th birthdays. Nonetheless, Patel signed the application with the following pre-printed acknowledgment: "I certify under penalty of perjury under the laws of the United States of America that this application, and the evidence submitted with it, are all true and correct." *Id.* at 10.

In preparation for his naturalization test, Patel studied the INS preparation booklet. However, he read only twenty to thirty of the sample questions and did not read the part of the booklet that explains the requirements for becoming a citizen, such as registering for the Selective Service.

On May 14, 2002, Patel applied for naturalization to become a U.S. citizen. On December 19, 2002, the INS sent Patel a notice instructing him to appear on February 26, 2003, for a naturalization interview. The notice instructed Patel that he must bring with him to the interview: the interview notice, his alien registration card (green card), his passport, and "any evidence of Selective Service Registration." Patel was in India getting married when the notice arrived, but a friend called him, read the notice to him, and told him that he only needed to bring his passport and green card to the interview. Patel did read the notice when he returned on February 9, 2003.

On February 26, 2003, Patel appeared as instructed for his naturalization interview. At that interview, the INS found that Patel was a person of good moral character and that he had met the English and history requirements. However, Patel's application was not granted because he had not registered for the Selective Service. After being informed that he needed to register, Patel went the following day to register with his younger brother, who was also applying for naturalization. Although his brother was able to register because he had not yet turned 26, Patel's application was refused because he had reached age 26 on December 25, 2002.

3

1 Patel sent an inquiry to the Selective Service regarding his registration status, and the
2 Selective Service responded in a letter dated March 26, 2003. The Selective Service System
3 informed Patel that he was not registered and that a person cannot register after attaining age
4 26. In addition, the letter noted that the Selective Service had sent Patel "one or more pieces
5 of correspondence informing [him] of the requirement to register, which were not returned as
6 undeliverable."[2] Ex. C to Daw. Decl. The letter also cited to Section 12(g) of the Military
7 Selective Service Act, which states that a person may not be denied a right under federal law
8 for failing to register for the Selective Service if he can demonstrate "by a preponderance of
9 the evidence that the failure to register was not a knowing and wilful failure to register." *Id.*
10 On May 7, 2003, the Selective Service System again notified Patel that his registration form
11 could not be processed because of his age. On June 24, 2003, the newly formed CIS
12 determined that Patel was ineligible for naturalization because he knowingly and wilfully failed
13 to register for Selective Service and, therefore, could not demonstrate that he was "disposed to
14 the good order and happiness of the United States and he has obeyed the laws which may result
15 from the process prescribed by the Constitution." Ex. D to Daw. Decl.
16 Patel timely appealed the CIS's determination. On September 3, 2003, Patel appeared
17 for his appeals hearing, at which he testified that (1) he did not understand the Selective
18 Service requirement until his interview for naturalization on February 26, 2003, and (2) he
19 tried to register the next day but was not allowed to register because he was over age 26. On
20 September 16, 2003, the CIS issued its decision denying Patel's appeal.
21 On January 12, 2004, Patel brought the instant action pursuant to Section 310(c) of the
22 Immigration and Nationality Act ("INA") seeking de novo review of the denial of his
23 naturalization application.

---

[2] Patel testified that he received no mail from the Selective Service, but the parties did not explore whether Patel in fact received the Selective Service correspondence. Because resolution of this issue of fact does not affect the ultimate outcome of this decision, the Court does not make a specific finding on this point.

4

**ANALYSIS**

**I.**

Patel is eligible for naturalization pursuant to INA §§ 310 *et seq.* [8 U.S.C. §§ 1421 *et seq.*]. This Court has jurisdiction to grant Patel's naturalization application pursuant to INA § 310(c) [8 U.S.C. §1421(c)]. Under that section, review of a denial of naturalization by a United States district court shall be de novo and the court shall make its own findings of fact and conclusions of law. *Id.*

**II.**

The CIS denied Patel naturalization based on his failure to register for the Selective Service. Under 50 U.S.C. app. §§ 453(a) and 456(a), all males between the ages of 18 and 26 who are citizens or residing in the United States, except aliens in lawful nonimmigrant status, must register for the Selective Service. Presidential Proc. No. 4771 of July 2, 1980 § 1-101, 94 Stats. 3775 (1980). However, section 12(g) of the Military Selective Service Act provides that:

> A person may not be denied a right, privilege, or benefit under Federal law by reason of failure to present himself for and submit to registration under section 3 [section 453 of this Appendix] if – (1) the requirement for the person to so register has terminated or become inapplicable to the person; and (2) the person shows by a preponderance of the evidence that the failure of the person to register was not a *knowing and wilful* failure to register.

50 U.S.C. app. § 462(g) (emphasis added). Thus, in order to prevail on his claim, Patel must prove, by a preponderance of the evidence, that he did not knowingly and wilfully fail to register for the Selective Service. *Id.*

In the criminal context, courts interpret a knowing and wilful failure to register with the Selective Service to require a showing of "deliberate purpose" not to comply with the Selective Service Act. *Ward v. U.S.*, 344 U.S. 924 (1953); *Graves v. U.S.*, 252 F.2d 878, 881-82 (9th Cir. 1958) ("the words 'knowingly fail or neglect to perform', etc., require[] proof

5

of the 'usual criminal intent'"); *U.S. v. Sisson*, 294 F. Supp. 515, 519 (D. Mass. 1968) ("wilfully" . . . means intentionally, deliberately, or voluntarily).  Thus, in the criminal context, the government must show beyond a reasonable doubt that the defendant intentionally failed to register.  *Id.*  The Eighth Circuit has held that this burden to prove criminal intent may be satisfied by "proof of facts and circumstances which establish that the defendant possessed knowledge of an obligation . . . which he did not perform."  *U.S. v. Klotz*, 500 F.2d 580, 581-82 (8th Cir. 1974).

In this case, which arises in the civil context, Patel has the burden to prove by a preponderance of the evidence that he did not knowingly and wilfully fail to register.  Thus, he must produce evidence that would negate knowledge and criminal intent, such as mistake of fact or law, duress, or incompetence.

Patel argues that he did not knowingly and wilfully fail to register because he did not understand the requirement to register.  It is a generally held principle that ignorance or mistake of the law is no excuse.  *Shevlin-Carpenter Co. v. Minnesota*, 218 U.S. 57, 68 (1910); *Lambert v. California*, 355 U.S. 225, 228 (1957); *Liparota v. United States*, 471 U.S. 419, 441 (1985) (White, J., dissenting).  This rule is founded on a fear "that its absence would encourage and reward public ignorance of the law to the detriment of our organized legal system, and would encourage universal pleas of ignorance of the law that would constantly pose confusing and, to a great extent, insolvable issues of fact to juries and judges, thereby bogging down our adjudicative system."  *U.S. v. Barker*, 546 F.2d 940, 954 (D.C. Cir.1976) (Merhige, J., concurring).

However, the United States Supreme Court has permitted a defense of ignorance of the law in the context of registration laws.  *See Lambert*, 355 U.S. 225.  In *Lambert*, the Court held that "actual knowledge of the duty to register, or proof of the probability of knowledge, and subsequent failure to comply are necessary before a conviction . . . can stand." *Id.* at 229. The defendant in *Lambert* was convicted of violating a felon registration ordinance that made it unlawful for any felon to be or remain in Los Angeles for a period of more than five days without registering.  Defendant was fined $250 and placed on probation for three years.  The

6

1  Supreme Court found that the nature of the ordinance was such that a person wholly passive and
2  unaware of any wrongdoing could be criminally condemned. *Id*. at 228. As this conflicted with
3  the due process requirement of notice, a conviction without showing knowledge of the duty to
4  register could not stand. *Id*. In the present matter, Patel faces punishment for a passive failure
5  to register over a period of five years. Although Patel does not face criminal condemnation,
6  the statute is explicit in requiring a showing of a lack of knowledge and intent in order to avoid
7  deprivation of the right to naturalization. Therefore, it is appropriate to permit a defense of
8  ignorance of the law in this context.

9  Nonetheless, Patel has failed to persuade the Court that he did not have knowledge of
10 the requirement to register. *Id.* at 229. In the context of a civil action, knowledge can be
11 inferred if the evidence shows that the person had information that would lead a reasonably
12 prudent person to inquire as to the facts, despite a lack of evidence that the person had actually
13 inquired and learned the facts. *See New El Rey Sausage Company, Inc. v. INS*, 925 F.2d 1153
14 (9th Cir. 1991); *see also* 3 *Fed. Jury Prac. & Instr.* § 104.24 (5th ed.). In *New El Rey*, the
15 Ninth Circuit employed this "constructive knowledge" standard in the context of a civil
16 immigration suit. A Special Agent with the INS ran a check on the immigration status of the
17 employees of New El Rey and found that nine employees were presumed unauthorized unless
18 they could provide their employer with valid employment authorization. *Id*. at 1155. Two of
19 the nine cited employees insisted they were authorized to work but produced no documentation
20 of valid employment authorization. *Id*. New El Rey nonetheless retained the two employees.
21 *Id.* In fining New El Rey for employing two unauthorized workers, the administrative law judge
22 found that New El Rey had constructive knowledge of its workers' unauthorized status because
23 the INS had provided the company with specific, detailed information regarding the workers.
24 *Id*. at 1157. The Ninth Circuit affirmed.[3] The present matter is likewise a civil case in which
25 the INS, and the U.S. Department of State, provided Patel with specific, detailed information

---

[3] The Ninth Circuit analogized the knowledge standard to one of "deliberate ignorance" in the context of criminal law. *Id.* at 1158; *see also U.S. v. Jewell*, 532 F.2d 697, 700 (9th Cir. 1976).

7

1  regarding the requirement to register, and Patel failed to follow up on that information. In both
2  situations, the "constructive knowledge" standard provides incentive to individuals and
3  businesses to be aware of and comply with U.S. laws and regulations in order to avoid
4  sanctions.

5  Further, in the context of a criminal failure to register for the Selective Service,
6  knowledge of a requirement to register may be inferred by circumstantial evidence relating to a
7  party's conduct or activities. *U.S. v. Boucher*, 509 F.2d 991, 994 (8th Cir. 1975). In *Boucher*,
8  the Eighth Circuit overturned the conviction of a defendant who had failed to timely register
9  because "the prosecution presented no direct evidence that [the defendant] had actual
10 knowledge of the registration requirement . . . nor any background information . . . that might
11 aid a factfinder in inferring that [the defendant] became aware of the obligation to register." *Id*.
12 at 992. Although general publicity about the requirement of registration for the draft was not
13 sufficient to infer knowledge, knowledge could be inferred where the government had provided
14 proof that defendant was aware of the requirement. Likewise, here, Respondents do not argue
15 that Patel had knowledge based on a general public awareness of the need to register, but
16 instead based on specific evidence that the INS and the Department of State had made Patel
17 aware of the requirement.

18 Patel argues that the definition of knowledge under § 462(g) is actual and not
19 constructive knowledge, citing *McDonald v. Gonzales*, 400 F.3d 684 (9th Cir. 2005). In
20 *McDonald*, an Immigration Judge ("IJ") began deportation proceedings against an alien after a
21 finding that she had knowingly engaged in voter fraud in violation of state law. The alien
22 defendant had voted but had not been aware that she was not eligible to vote. By mistake, she
23 had originally checked the box marked "citizen" on her application for a driver's license and
24 subsequently received a voter registration confirmation card in the mail. Defendant interpreted
25 the card as confirming her eligibility to vote; voted; and, at her naturalization interview,
26 informed the agent that she had voted in the last election. On appeal, the Ninth Circuit found
27 that the IJ had used the wrong definition of "knowingly" as defined by the state criminal law for
28

8

voter fraud, and that the defendant did not have the requisite mens rea because she had not been actually aware that she was ineligible to vote.

This Court declines to adopt the *McDonald* standard in this case for the following two reasons:  First, the definition of knowing under the Military Selective Service Act, 50 U.S.C. App. §§ 451 *et seq.* is distinct from the definition under the state law in *McDonald*, and that state law is not applicable to this case.  As noted above, knowing in the context of failure to register for the Selective Service may be inferred from proof of facts and circumstances and may be a credibility determination.  *Boucher*, 509 F.2d at 994; *U.S. v. Saunders*, 435 F.2d 683 (5th Cir. 1970) (evidence of requisite intent to evade the draft was a credibility choice for the district court).  Second, the Ninth Circuit in *McDonald* explicitly noted that it refused the "should have known" standard in that case because the defendant faced criminal conviction. *McDonald*, 400 F.3d at 689; *see also Woodby v. INS*, 385 U.S. 276, 286 (1966) (deportation, though not a penal sanction, surpasses in severity most criminal penalties and so may require a showing of moral culpability).  The case at bar is a civil case in which the sanction is not deportation, nor any comparable penal sanction, but only a five-year delay in naturalization. Thus, the reasoning used in *McDonald* to hold the government to a criminal definition of "knowing" as opposed to a civil "should have known" standard is not applicable here.

Patel makes two additional procedural arguments, analogizing to asylum law, to attempt to persuade this Court that he had no knowledge of the requirement to register.  First, Patel argues that, by law, where he asserts a plausible reason for his failure to register – that he did not understand the requirement – and the INS fails to produce any other plausible reason, Patel's reason must be presumed to be the most plausible.  Patel bases this argument for presumptive credibility on the Ninth Circuit's decision in *Hernandez-Ortiz v. INS*, 777 F.2d 509, 516 (9th Cir. 1985) ("If there is no evidence of a legitimate prosecutorial purpose for a government's harassment of a person . . . there arises a presumption that the motive for asylum is political.").  This Court does not find this argument persuasive.  The statutory language of 50 U.S.C. § 462(g) regarding failure to register for Selective Service implies no such presumption.  Further, Patel has failed to show how asylum law is applicable to the present

9

1 matter. Moreover, even if Patel's reason for failing to register is presumed to be plausible, the
2 INS has successfully rebutted the presumption by demonstrating that Patel had knowledge but
3 failed to act on it.

4 Second, Patel analogizes to asylum law to contend that his testimony alone is sufficient
5 to satisfy his burden of proof if that testimony is detailed, credible, and plausible. *Ladha v.*
6 *INS*, 215 F.3d 889, 897-901 (9th Cir. 2001). Again, Patel fails to demonstrate how asylum
7 laws are applicable to this civil case in which Patel is not facing deportation and is making no
8 attempt to demonstrate a "well-founded fear of persecution" in his home country. As noted
9 above, in determining proof of knowledge, this Court may take into consideration
10 circumstantial evidence in addition to Patel's testimony. *See Boucher*, 509 F.2d at 994.

11 Applying the above legal analysis to this case, the Court finds, for the reasons discussed
12 below, that the record supports an inference that Patel had knowledge of the requirement to
13 register with the Selective Service, and that Patel has failed to produce sufficient evidence to
14 negate that inference. First, at his second visa interview at the United States Consulate in
15 Mumbai, Patel signed Form DS-1810, Notice of Duty to Register with U.S. Selective Service,
16 which clearly states that all men between 18 and 26 must register for the Selective Service
17 upon entry into the United States, that it is not possible to register after the age of 26, and that
18 failure to register may lead to a denial of U.S. citizenship. Agents at the Consulate translated
19 parts of this form into Hindi for Patel. Although Patel's native language is Gujarati, he made
20 no indication to the agents that he preferred to conduct his interviews in Gujarati rather than
21 Hindi, nor did he ask to have the document translated, in whole or in part, into Gujarati. Patel
22 told the agents that he spoke Hindi and made no indication that he did not understand the
23 interview or the content of the documents. Moreover, he acknowledged to the agents that he
24 understood the requirement that "when you go to the United States, you had to fill it out,
25 selective service form. And send in Post Office." RT 36:11-13.

26 Second, Patel had further opportunities to have knowledge of and to fulfill the Selective
27 Service registration requirement before his 26th birthday. Five years after Patel's arrival in the
28 United States, on May 14, 2002, Patel applied for naturalization. The naturalization application

10

that Patel signed and submitted, with the aid of his friend, contained questions regarding the Selective Service requirement. Patel had the opportunity to read or have translated for him this document pertinent to the requirements for naturalization. In addition, Patel testified that he prepared for the naturalization test using a booklet that the INS provided. The booklet contains an explanation of the requirements for citizenship, including registration for Selective Service.

Finally, on December 19, 2002, the INS sent Patel a notification of his naturalization interview, clearly stating that he must bring any evidence of Selective Service registration to the interview. Patel was in India at the time, but a friend called to tell him about the interview appointment. Patel had a further opportunity to inquire into the requirements for naturalization at that time. Patel read the notice upon return to the United States in February 2003, but did not understand what "evidence of Selective Service Registration" meant. At each of these points in time, Patel had the opportunity to learn about the Selective Service requirement. It can be inferred from the above that Patel had knowledge of the registration requirement.

Patel seeks to negate this inference by arguing that his lack of understanding of the Hindi and English languages caused him to misunderstand the Selective Service requirement for naturalization. This Court finds this argument unpersuasive. At his second interview in Mumbai, Patel knew that he had to sign a form and mail it in when he arrived in the United States, and he admits that he simply forgot to do so. Then, after having lived in the United States for five years, Patel had multiple opportunities to inform himself about the requirements for naturalization, including the Selective Service requirement. During that time, he was in regular contact with English speakers through his duties as a desk clerk at a residential hotel and later when he leased and managed a residential hotel in partnership with his brother. At his naturalization interview, he met the English language requirement. Further, he had opportunities to have INS documentation translated for him. This Court finds that Patel has failed to sufficiently prove that he did not understand, nor have the opportunity to inform himself of, the Selective Service requirement.

Patel has the further burden to prove, by a preponderance of the evidence, that he did not have intent to fail to register for the Selective Service. 50 U.S.C. App. § 462(g); *Ward*, 344

U.S. 924; *Graves,* 252 F.2d 878. Patel argues that, in order for this Court to make a finding of intent, Respondent must prove a deliberate act of evasion on the part of the Patel. However, Patel's reliance on the Supreme Court's decision in *Ward*, a criminal case, to support this argument is misplaced. First, the Court in *Ward* required the government to prove, beyond a reasonable doubt, deliberate purpose on the part of defendant for failure to register. *Ward*, 344 U.S. at 924 (1953). Proof of a deliberate act would meet this burden. However, Patel, and not the INS, has the burden of proof in this case, and Patel must produce evidence negating criminal intent. In addition, in *Ward*, the Court based a finding of lack of deliberate purpose on the content of the record. *Id.* The record in that case contained evidence that the defendant had made a good-faith attempt to comply with the registration laws by providing the Selective Service with an updated address for his employer. *Ward v. U.S.*, 195 F.2d 441, 442 (5th Cir. 1952). This evidence supported an inference against criminal intent. *Id.* Here, Patel fails to produce any evidence of a good-faith attempt to comply with the Selective Service Act before the requisite age of 26 years old.

Under the Eighth Circuit interpretation of knowing and wilful, a showing of knowledge and failure to register is sufficient to infer intent in the criminal context. *U.S. v. Klotz*, 500 F.2d 580 (8th Cir. 1974). However, the case law is unclear as to whether a defendant may raise a good-faith defense for failure to comply with registration laws in order to negate the inference of intent. *See Ward v. U.S.*, 344 U.S. 924 (1953), *rev'g* 195 F.2d 441 (5th Cir. 1952) (Supreme Court reversed Circuit Court's finding of deliberate purpose on part of petitioner not to comply with the Selective Service Act based on the record, but made no ruling on whether the Circuit Court erred in affirming the denial of a jury instruction on a good-faith defense). Patel argues that he may assert a claim of good-faith to negate an inference of wilful failure to comply with the law based on the Supreme Court's decision in *Cheek v. U.S.*, 498 U.S. 111 (1985). In *Cheek*, the Supreme Court found that, in the context of criminal tax offenses, "wilfulness . . . requires . . . that the law imposed a duty on the defendant, that the defendant knew of this duty and that he voluntarily and intentionally violated the duty." *Id.* at 201. Thus, the defendant may assert a good-faith defense, that he or she in good-faith believed

12

that he or she was in compliance with the law, "whether or not the claimed belief or misunderstanding is objectively reasonable." *Id*. at 202.  The Ninth Circuit has specifically noted that *Cheek* represents an exception to the traditional definition of wilfulness that "turns entirely on the special treatment of criminal tax offenses . . . due to the complexity of tax laws." *U.S. v. Lorenzo*, 995 F.2d 1448, 1455 (9th Cir. 1993).  Patel has made no showing – nor does the Court believe – that the INS laws governing naturalization, nor specifically the INS requirement to register for the Selective Service, achieve the level of complexity of United States tax laws.

Even if, *arguendo*, this Court allowed Patel to assert a good-faith belief that he was in compliance with the law, the record fails to adequately support that assertion.  Patel has failed to produce evidence that he made any good-faith attempt to register with the Selective Service or to inform himself of his duties as a lawful permanent resident of the United States.  Patel's attempt to register immediately following his naturalization interview occurred five years after he originally became aware of the duty and after the statutory window for registration had passed; thus, it is insufficient proof to convince the Court that his failure to register was not intentional.  Accordingly, in light of all of the above, this Court finds that Patel knowingly and wilfully failed to register for the Selective Service.

### III.

Patel next argues that a knowing and wilful failure to register with the Selective Service cannot, as a matter of law, preclude a finding of favorable disposition to the good order and happiness of the United States and therefore does not preclude naturalization.  Patel bears the burden of establishing by a preponderance of the evidence that he meets all the requirements for naturalization.  8 C.F.R. § 316.2(b).  To be eligible for naturalization, Patel must establish that, during the five year period before the filing of his naturalization application, he "has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." INA §316(a)(3) [8 U.S.C. §1427(a)(3)], *U.S. v. Hovsepian*, 359 F.3d 1144, 1168 (9th Cir.

13

2004). All doubts regarding eligibility are resolved against the petitioner. *Berenyi v. INS*, 385 U.S. 630, 637 (1967).

The INS, now the CIS, is "the agency primarily charged by Congress to implement the public policy underlying the [naturalization] laws." *INS v. Miranda*, 459 U.S. 14, 19 (1982). On June 18, 1999, the INS issued Policy Memo 52 to provide guidance to field officers regarding the effect of a failure to register for Selective Service on an applicant's eligibility for naturalization. This memo provides that "[a] man between 26 and 31 years of age who was required to register for the Selective Service and who knowingly and wilfully failed to register cannot demonstrate that he is eligible for naturalization" because he cannot show that he was "well-disposed to the good order and happiness of the United States." Ex. 6 to Daw Decl. at 4.

When a "statute is silent or ambiguous with respect to the specific issue" and the agency entrusted with administering the statute has interpreted the statutory scheme, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). If the agency reasonably interprets the statute, then the court accords "considerable weight" to the agency's interpretation. *Id.* at 844-45. However, "[i]nterpretations such as those in opinion letters – like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law – do not warrant *Chevron*-style deference." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000). Instead, such interpretations are "'entitled to respect' . . . but only to the extent that those interpretations have 'the power to persuade.'" *Id.* (citation omitted). Thus, here, the Court must give some deference to the interpretation of the "well disposed" naturalization requirement contained in INS Policy Memo 52, but it is not required to apply the high level of deference articulated in *Chevron*.

Neither the INA nor federal regulations delineate a *per se* rule that failure to register for Selective Service precludes a finding of being well disposed to the good order and happiness of the United States and thus precludes a grant of naturalization. The federal regulations do, however, provide some guidance in interpreting the phrase: "Attachment implies a depth of conviction which would lead to active support of the Constitution.

14

Attachment and favorable disposition relate to mental attitude, and contemplate the exclusion from citizenship of an applicant who is hostile to the basic form of government of the United States, or who disbelieves in the principles of the Constitution." 8 C.F.R. § 316.11(a). The regulations also provide that, "[a]t a minimum, the applicant shall . . . demonstrat[e] an acceptance of the democratic, representational process established by the Constitution [and] a willingness to obey the laws which may result from that process." 8 C.F.R. § 316.11(b).

Courts have found that the question of attachment and favorable disposition "requires ascertainment of . . . [the applicant's] state of mind . . . and that can be fathomed only by the credibility of what he says and the reflection of his inner views by his outward conduct." *In re Pet. for Naturalization of Jorge Vivino Daniel Arbesu*, 347 F. Supp. 1014, 1017 (E.D. La. 1972) (citing *In re Petition of Edward Sittler*, 197 F. Supp. 278 (S.D.N.Y. 1961), *aff'd, Sittler v. U.S.*, 316 F.2d 312 (2d Cir. 1963)). Courts take into consideration the credibility of the petitioner on the witness stand, outward conduct, and reputation in the community. *See e.g. Sittler*, 316 F.2d 312.

Deliberate violation of laws, regulations, and ordinances by an applicant for naturalization indicates to some extent the absence of will to abide by the principles of the Constitution. Federal regulations provide that, where such violations reach the level of a crime involving moral turpitude, the applicant is barred from naturalization for failure to show good moral character. *See* 8 C.F.R. § 316.10(a)(1). However, minor violations that are not inimical to the good order of the United States are not necessarily a bar to naturalization. *See Yin-Shin Woo v. U.S.*, 288 F.2d 434 (2d Cir. 1961) (repeated and deliberate disregard of parking regulations does not preclude a finding that applicant is "well-disposed"); *Puciaty v. I.N.S.*, 125 F. Supp. 2d 1035 (D. Haw. 2000) (applicant's failure to pay civil judgment or have judgment set aside is not sufficient to deny naturalization).

Patel's failure to register for the Selective Service is most analogous to the situation in *Gambino v. Pomeroy*, 562 F. Supp. 974 (D.N.J. 1982), in which the district court found that a resident alien failed to show eligibility for naturalization based on his failure to file federal and state tax returns over a period of three years. In both *Gambino* and the present matter,

petitioners have passively failed to comply with a U.S. law for which both severe criminal and civil sanctions could result but which does not neatly fall into the category of crimes of moral turpitude.

Further, in the context of performance of military service, 8 U.S.C. § 1425 prohibits naturalization of any person who evades induction into the armed forces. *See also In re Dunn*, 14 I. & N. Dec. 160 (1972). Courts have further found that refusal to take an oath to bear arms or perform non-combative military service may bar naturalization, unless the applicant shows a sincere conscientious objection to the oath. *See U.S. v. Schwimmer*, 279 U.S. 644 (1929) (refusal to bear arms supports a finding against applicant's favorable disposition to the principles of the U.S. Constitution); *see also Girouard v. United* States, 328 U.S. 61, 63-64 (1953) (refusal to bear arms due to religious conviction is not a barrier to citizenship); *In re Weitzman*, 426 F.2d 439 (8th Cir. 1970) (extending the exemption to non-religious conscientious objectors). Patel's failure to register for the Selective Service shows a mental attitude and unfavorable disposition to the duties of a United States citizen that is similar to the attitude of a person who evades induction into the military or who refuses to bear arms and makes no showing of a conscientious objection.

Patel argues that his good moral character and reputation in the community show that he is "well disposed" to the good order of the United States. The CIS has found Patel to be a person of good moral character, and his reputation and general conduct have been shown to be good. Patel has made sworn statements that he is willing to bear arms on behalf of the United States and to uphold the constitution of the United States. He has never been subject to a criminal prosecution for violation of a United States law and he has paid his taxes since his arrival in 1997. Further, Patel has produced eight witnesses who testify that he is a hard worker and well respected in the community. In his sworn testimony, Patel states that he is a man of "strong family values and tradition," a dedicated son and husband, a hard worker who volunteers his free time to assist colleagues, and a religious man active in his temple.

Although a showing of good moral character is one factor pertinent to its determination, this Court must consider all relevant evidence in analyzing whether Patel is

well-disposed to the good order and happiness of the United States . *See Sittler*, 316 F. Supp. at 312 (petitioner, a voluntary member of the Nazi party, had shown himself to be of good moral character but failed to demonstrate an attachment to the United States). Even if the Court were to reject the *per se* rule contained in INS Policy Memo 52, Patel's knowing and wilful failure to register for the Selective Service nonetheless weighs heavily against a grant of eligibility for naturalization. Patel has shown an indifference to the laws and regulations of the United States. He has further shown a disregard for the duties imposed on all male United States citizens to abide by Selective Service laws and an unfounded disrespect for the United States institution that protects and defends our democracy. An applicant for citizenship must show a readiness and willingness to obey the laws that stem from the democratic and representative process established by the Constitution. Patel has failed to show this readiness.[4]

## IV.

New immigrants to the United States must navigate a difficult and complex new system of laws upon arrival in this country, often with linguistic and cultural impediments and with limited resources. Nonetheless, they have a duty to make every effort to understand and comply with the processes of their new government. In this case, Patel repeatedly stated that he understood the requirements of registering for the Selective Service, including signing a sworn statement that he knew he had to register upon arrival in the United States. Patel also had multiple opportunities to remind himself of the Selective Service requirement during the naturalization process, but he neglected to do so; for example, Patel failed to read the complete booklet of information the government provided to him with his application for naturalization and instead only reviewed a handful of test questions.

---

[4] Based on the facts of this case, the Court need not rule on the validity of INS Policy Memo 52. It remains possible that an applicant might be able to demonstrate eligibility for naturalization even if he knowingly and wilfully failed to register for the Selective Service. For the reasons discussed above, however, Patel has not done so.

17

Faced with a petitioner who admits that he understood the Selective Service requirement but forgot – over a period of over five years – to complete his registration, despite readily available information reminding him of the requirement, this Court simply cannot conclude that Patel has demonstrated a favorable disposition to the laws, good order, and happiness of the United States. Consequently, after giving careful review to all the above evidence and legal arguments, this Court must DENY Patel's appeal for naturalization. The Clerk shall close the file.

**IT IS SO ORDERED.**

DATED   08/10/05                                /s/
                                        THELTON E. HENDERSON, JUDGE
                                        UNITED STATES DISTRICT COURT